1   HATTON, PETRIE & STACKLER APC
    Attorneys at Law
2   85 Argonaut, Suite 210
    Aliso Viejo, CA 92656
3   Telephone:  (949) 474-4222

4
    **ARTHUR R. PETRIE, II, CAL. BAR NO. 158654**
5   **JOHN A. McMAHON, CAL. BAR NO. 237261**

6
    Attorneys for Defendant
7   Pluralsight, LLC

8                  UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   _____

12                                    )   No. 2:16-cv-01148-MCE-CKD
     KYLE JOHNSON, individually and on )
13   behalf of all others similarly situated, )   **DEFENDANT'S NOTICE OF**
                                      )   **MOTION AND MOTION TO**
14                        Plaintiff,  )   **DISMISS FOR FAILURE TO**
                                      )   **STATE A CLAIM UPON WHICH**
15         vs.                        )   **RELIEF CAN BE GRANTED**
                                      )   **(FRCP 12(b)(6));**
16                                    )   **MEMORANDUM OF POINTS**
     PLURALSIGHT, LLC, a Nevada limited )   **AND AUTHORITIES IN**
17   liability company; and DOES 1-10, )   **SUPPORT THEREOF**
     inclusive,                       )
18                                    )
                                      )   Assigned to Hon. Morrison C.
19                        Defendants. )   England, Jr., Courtroom 7, Fourteenth
                                      )   Floor
20                                    )
                                      )
21                                    )   Date:  July 28, 2016
                                      )   Time:  2:00 PM
22                                    )   Location:  Courtroom 7, Fourteenth
                                      )   Floor
23                                    )
                                      )
24                                    )
                                      )
25                                    )
     _____ )
26

27

28

MOTION TO DISMISS (FRCP 12(B)(6))          No. 2:16-CV-01148−MCE−CKD

<u>**NOTICE OF MOTION AND MOTION**</u>

TO THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 28, 2016, at 2:00 PM, or as soon thereafter as the matter may be heard in the above-entitled Court, located at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Courtroom 7, 14th floor, defendant PLURALSIGHT, LLC ("defendant" or "Pluralsight"), will and hereby does move the Court to dismiss this action or certain portions of this action pursuant to FRCP 12(b)(6).  The Court should grant the relief on the grounds that:

1.     The first cause of action ("count") for "VIOLATIONS OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (BUSINESS AND PROFESSIONS CODE §§ 17600-17604)" fails to state facts sufficient to constitute a cause of action against defendant; and/or

2.     The first cause of action ("count") for "VIOLATIONS OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (BUSINESS AND PROFESSIONS CODE §§ 17600-17604)" is vague and ambiguous; and/or

3.     The second cause of action ("count") for "VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204)" fails to state facts sufficient to constitute a cause of action against defendant; and/or

4.     The second cause of action ("count") for "VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204)" is vague and ambiguous.

This motion is based on the following arguments, which are detailed in the memorandum of points and authorities below:

- There is no cause of action for "VIOLATIONS OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (BUSINESS AND PROFESSIONS CODE §§ 17600-17604)";

1    • Even if the Automatic Renewal Law ("ARL") were self-enforcing, plaintiff's
2       claims still would fail because:
3          o Defendant's efforts to disclose the recurring nature of the charges at
4             issue---and plaintiff's evident understanding that he was being
5             charged each month for his subscription that he apparently
6             continued to enjoy---prevents liability under the Automatic
7             Renewal Law's "good faith" provision.  (See Business &
8             Professions Code section 17604, sub. (b).)
9          o The scope of the "auto-renewal" statute is limited to "individuals"
10            "purchasing or leasing" for "personal, family, or household
11            purposes" "goods, services, money, or credit." The transaction
12            described in the complaint does not fit this description of a
13            "consumer," as contemplated in the statute.  (See Business &
14            Professions Code section 17601, sub. (d).)
15   • Plaintiff's Unfair Competition Law ("UCL") claim fails because:
16         o The UCL requires a plaintiff to have suffered an actual injury in the
17            form of a loss of money or property, which injury is attributable to the
18            defendant's alleged wrongdoing.  Plaintiff here alleges no such injury.
19         o Plaintiff cannot satisfy any of the three prongs under which such a UCL
20            action can be brought.  First, Pluralsight's conduct was not remotely
21            fraudulent, and Plaintiff has not met the heightened pleading
22            requirement required to state a claim under the UCL's fraud prong.
23            Second, plaintiff cannot satisfy the requirements for a claim under the
24            statute's unfairness prong where Pluralsight accurately disclosed the
25            recurring charges at the point of the transaction.  Finally, plaintiff
26            cannot state a claim under the unlawfulness prong for the reasons listed
27            above with respect to Business & Professions Code section 17600, et
28            seq.

1    • Plaintiff claims to bring this action on behalf of "all persons in California"

2      who purchased PluralSight subscriptions.  Several recent Court decisions

3      have made clear that 17200, et seq., and 17600, et seq., only apply to

4      California consumers.  The complaint if vague and ambiguous as to

5      whether plaintiff is a California Citizen and/or consumer.

6         The motion will be based on this Notice of Motion and Motion, the Memorandum

7   of Points and Authorities set forth below, on the separate Request for Judicial Notice and

8   the authenticating declaration and exhibits thereto, on the pleadings and papers filed in

9   this matter, and on any and all argument and evidence provided in opposition and/or

10  reply papers, and at the hearing hereon.

11        Respectfully submitted,

12

13  Dated:  June 22, 2016                    HATTON, PETRIE & STACKLER APC

14

15                              By:  _____/S/ John A. McMahon_____

16                                        Arthur R. Petrie, II
                                         John A. McMahon

17                                Attorneys for Defendant
                                 PLURALSIGHT, LLC

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2 **Content**                                                                    **Page**

3   **I.  INTRODUCTION AND SUMMARY OF ARGUMENT**                        1

4   **II. FACTUAL ALLEGATIONS IN COMPLAINT**                            4

5   **III.   LEGAL STANDARD**                            5

6   **IV. ARGUMENT**                                                    6

7     **a. Plaintiff's First Cause of Action Under the Automatic Renewal**

8     **Law ("ARL") Should Be Dismissed**                      6

9       *1. The ARL Does Not Create A Private Right of Action*    6

10       *2. Pluralsight's Good-Faith Disclosures Preclude Any Liability*

11       *Based On The Automatic Renewal Law*        10

12       *3. The Plaintiff Does Not Fit The Requirements of a*

13       *"Consumer" Under the ARL*                  12

14     **b. Plaintiff Lacks Standing to Sue Under the UCL**     13

15     **c. Even if Plaintiff Had Suffered an Injury, Plaintiff's Claims Under**

16     **the UCL Still Fail to State a Cause of Action**       15

17       *1. Plaintiff Cannot State A Claim Under The Fraud Prong*    16

18       *2. Plaintiff Cannot State A Claim Under The Unfair Prong*    18

19       *3. Plaintiff Cannot State A Claim Under The Unlawful Prong*

20   19

21     **d. Plaintiff Has Not Pled He is a California Citizen of Consumer**   20

22 **V. CONCLUSION**                                                             20

23

24

25

26

27

28

1  **<u>TABLE OF AUTHORITIES</u>**

2  **<u>Authority</u>**                                                                    **<u>Page</u>**

3

4  *<u>Codes & Statutes</u>*

5  California Business & Professions Code § 17200                         *Passim*

6  California Business & Professions Code § 17204                              3

7  California Business & Professions Code § 17600                         *Passim*

8  California Business & Professions Code § 17601                             12

9  California Business & Professions Code § 17602                         *Passim*

10 California Business & Professions Code § 17603                           8, 9

11 California Business & Professions Code § 17604                         *Passim*

12 California Evidence Code § 452                                               8

13 FRCP Rule 12(b)(6)                                                          5

14 FRE Rule 201                                                                6

15 California Prop. 64, § 1, subd. (e) (2004)                                 14

16

17 *<u>Cases</u>*

18 *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988)      5

19 *Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1275 (2006)    17, 18

20 *Baxter v. Intelius, Inc.,* No. SACV 09-1031 AG (MLGx), 2010 U.S. Dist. LEXIS

21 104218, at *12 (C.D. Cal. Sept. 16, 2010)                                   17

22 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)                  5

23 *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)                        6

24 *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996)       5

25 *Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 228 (2006)  13

26 *Camacho v. Auto. Club of S. Cal.,* 142 Cal. App. 4th 1394, 1403 (2006)    19

27 *Castagnola v. Hewlett-Packard Co.,* No. C 11-05572-JSW, 2012 U.S. Dist. LEXIS

28 82026, at *28-29 (N.D. Cal. June 13, 2012)                                  16

1   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 185 (1999)   16

2   *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1355 (2010)   19

3   *Fields v. Wise Media, LLC,* No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 87671,

4   at *13-15 (N.D. Cal. June 21, 2013)   7

5   *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002)   6

6   *Graham v. Bank of Am., N.A.,* 226 Cal. App. 4th 594, 612-13 (2014)   18

7   *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542   6

8   *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d

9   1524, 1537 (9th Cir.1996)   5

10   *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013)   19

11   *In re Pluralsight, Inc. Privacy Policy Litig.,* No. C-12-01382-PSG, 2013 U.S. Dist.

12   LEXIS 171124, at *47-49 (N.D. Cal. Dec. 3, 2013)   18

13   *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009)   16

14   *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144 (2003)   16

15   *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322-23 (2011)   *Passim*

16   *Law Offices of Mathew Higbee v. Expungement Assistance Servs.,* 214 Cal. App. 4th

17   544, 547 (2013)   14

18   *Lazar v. Superior Court,* 12 Cal. 4th 631, 645 (1996)   16

19   *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001)   5, 6

20   *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007)   16

21   *Lu v. Hawaiian Gardens Casino, Inc.,* 50 Cal. 4th 592, 596 (2010)   6, 7

22   *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995)   5

23   *Noe v. Superior Court,* 237 Cal. App. 4th 316, 337-39 (2015)   8

24   *Noll v. eBay Inc.,* No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS 76323, at *15

25   (N.D. Cal. May 30, 2013)   17

26   *Pirozzi v. Apple, Inc.,* 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013)   15

27   *Post v. Prati,* 90 Cal. App. 3d 626, 634 (1979)   8

28

1  *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008)     16

2  *Moncada v. W. Coast Quartz Corp.,* 221 Cal. App. 4th 768, 776 (2013)     16

3  *Spokeo, Inc. v. Robins*, 578 U.S. ___ [at page 7] (2016)     14

4  *Thurman v. Bayshore TransitMgmt., Inc.,* 203 Cal. App. 4th 1112, 1131-32 (2012)

5                                                                                     6

6  *Warner v. Tinder, Inc.* 105 F.Supp.3d 1083, 1096-1097 (2015)     20

7

8  *Other Authority*

9  Senate Judiciary Committee, Bill Analysis of Sen. Bill No. 340 (2009-2010 Reg.

10  Sess.) as amended Apr. 2, 2009, for hearing on Apr. 14, 2009     8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1             <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2       Defendant Pluralsight, LLC ("Pluralsight") submits this Memorandum of

3 Points and Authorities in support of its Motion to Dismiss Plaintiff Kyle Johnson's

4 ("Johnson") Complaint.

5    **I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

6       Pluralsight provides an online and mobile application in which it offers users

7 a license, in return for payment of a monthly or yearly fee, to access intellectual

8 property either owned by Pluralsight or licensed to Pluralsight, that is designed to

9 facilitate learning and development for IT professionals and software developers.

10 [See Complaint ¶ 18.]  For instance, if an IT professional wanted to learn a new and

11 advanced website development tool, he or she (or their employer) could buy a

12 subscription to Pluralsight and view any number of on-line courses instructing on

13 how to utilize said website development tool.

14       Plaintiff Kyle Johnson purports to be a Pluralsight subscriber.  As Plaintiff

15 himself admits, when Johnson signed up for Pluralsight's free 10-day trial, he was

16 informed in no uncertain terms that at the end of his 10-day trial, his subscription

17 would default to Pluralsight's "standard subscription."  Mr. Johnson was also given

18 a link where he could control, including cancelling, his account at any time.  [See

19 page 7 to the Complaint.]   Further, Johnson admits that he was given a monthly

20 reminder from Pluralsight that his subscription had renewed, which contains a link

21 where Mr. Johnson could control "the status of [his] subscription at any time…"

22 [See page 8 and 9 to the Complaint.]  In other words, Johnson was given a monthly

23 e-mail reminder with a link wherein he could easily cancel his subscription.

24       Moreover, at the time Johnson signed up for Pluralsight's free trial, he

25 acknowledged that, should he fail to cancel his subscription, that Johnson would be

26 charged a monthly or annually fee to Mr. Johnson's express choosing.  The page on

27 which Johnson made his decision informed him: "May I cancel my trial before I'm

28 billed?  Yes, you can cancel your trial at any time during the first 10 days and we

                                                       

1  will not charge your credit card.  Otherwise, after 10 days we will convert your trial

2  into a paid subscription.  Paid subscriptions are automatically renewed.  As a

3  subscriber, you turn off auto renew at anytime."  [See RFJN, Exhibit A.]

4      Not surprisingly, therefore, Johnson does not allege that he signed up for

5  Pluralsight without understanding that, if he did not cancel after the 10-day trial, he

6  would be charged each month for his subscription.  Nor does plaintiff allege that he

7  did not want or did not use or enjoy Pluralsight, or that he would not have

8  purchased, or that he would have cancelled his subscription, had there been some

9  more prominent notice regarding the recurring charges.  In short, there is nothing in

10  the Complaint to suggest anything other than that plaintiff knew he was signing up

11  for a service with recurring monthly payments and that he received from Pluralsight

12  exactly what he presumably wanted and presumably proceeded to use.

13      Johnson now claims that this routine commercial transaction violated

14  California law and entitles him to represent an expansive class of other Pluralsight

15  users seeking to obtain, for free, the service they elected to purchase.  Plaintiff's

16  claims fail as a matter of law and should be dismissed.

17      Plaintiff's first cause of action is under California's "Automatic Renewal

18  Law" (sometimes referred to herein as "ARL", Business & Professions Code §

19  17600, *et seq.).*  It fails for numerous reasons.

20      First and foremost, the statute does not itself authorize anyone to sue.

21  Instead, the ARL is enforced by filing suit under the Unfair Competition Law

22  ("UCL", Business & Professions Code § 17200, et seq.) that provides for a civil

23  cause of action for allegedly unlawful or unfair conduct.  (But, as discussed below,

24  Plaintiff has no viable UCL claim, either.)

25      Even if the ARL were self-enforcing, plaintiff's claims still would fail for a

26  number of other reasons:

27      1)  Defendant's efforts to disclose the recurring nature of the charges at issue-

28          and plaintiff's evident understanding that he was being charged each

1    month for his subscription that he continued to presumably enjoy prevents

2    liability under the ARL's "good faith" provision.  (See Business &

3    Professions Code section 17604, sub. (b).)

4    2)   The scope of the "auto-renewal" statute is limited to "consumers", which

5    refers to "individuals" "purchasing or leasing" for "personal, family, or

6    household purposes" "goods, services, money, or credit." The transaction

7    described in the complaint does not fit this description of a "consumer," as

8    contemplated in the statute

9    Plaintiff's remaining cause of action is under the UCL, and equally infirm.

10   As an initial matter, the UCL requires a plaintiff to have suffered an actual injury in

11   the form of a loss of money or property attributable to the defendant's alleged

12   wrongdoing.  Plaintiff here alleges no such thing.  Indeed, nothing in the complaint

13   suggests that plaintiff suffered any harm at all, and certainly not that he lost money

14   or property *because of* Pluralsight's statements (or alleged lack thereof) regarding the

15   recurring payments that come along with the paid Pluralsight account that he

16   requested.

17   Beyond the lack of standing, plaintiff's UCL claims must be dismissed

18   because Plaintiff cannot satisfy any of the three prongs under which such a UCL

19   action can be brought.  First, Pluralsight's conduct was not remotely fraudulent, and

20   plaintiff has not met the heightened pleading requirement required to state a claim

21   under the UCL's fraud prong.  Second, plaintiff cannot satisfy the requirements for a

22   claim under the statute's unfairness prong where Pluralsight accurately disclosed the

23   recurring charges before, during and after the transactions.  Finally, plaintiff cannot

24   state a claim under the unlawfulness prong for the reasons listed above with respect

25   to Business & Professions Code section 17600, et seq.

26   Finally, plaintiff claims to bring this action on behalf of "all persons in

27   California" who purchased Pluralsight subscriptions.  Several recent Court decisions

28   have made clear that 17200, et seq., and 17600, et seq., only apply to California

1  consumers.  The complaint is vague and ambiguous as to whether plaintiff is a

2  California Citizen and/or California consumer.

3  **II. FACTUAL ALLEGATIONS IN COMPLAINT**

4       Plaintiff makes the factual allegations listed below in the operative complaint.

5  Defendant Pluralsight in no way agrees or concedes to any of the alleged facts.

6       Johnson says he purchased a subscription plan from Pluralsight "in California

7  during the Class Period."  [Comp. ¶ 7.]  Pluralsight is a Nevada LLC with a principal

8  place of business in Utah.  Pluralsight operates at least partially in California.  Its

9  business is a to operate a website marketing subscriptions for online technology

10 training "and related products/services."  [Comp. ¶ 8, 18.]

11      After plaintiff subscribed to Pluralsight, Pluralsight sent him an e-mail

12 acknowledging his subscription, which plaintiff claims failed to inform him that the

13 subscription would automatically renew, the terms of the automatic renewal,

14 including the cancellation policy, and how to cancel.  Further, plaintiff alleges that

15 Pluralsight did not offer him the chance to cancel the subscription before the auto-

16 renewal took place.  [Comp. ¶ 19.]  At pages 6-9 of the complaint plaintiff attaches

17 e-mails purporting to show or establish these allegations.

18      Plaintiff then makes a first cause of action alleging a violation of California

19 Business and Professions Code § 17602(a)(3) and 17602(b).  In doing so he alleges

20 that he purchased his Pluralsight subscription for "personal, family or househould

21 purposes."  Plaintiff then rehashes the allegations above and concludes a breach of

22 the ARL.  [Comp. ¶¶ 30-35.]

23      Plaintiff next makes a second cause of action alleging a violation of

24 California Business and Professions Code § 17200, et seq.  In doing so he alleges

25 that, based on the allegations listed above, Pluralsight has committed unfair or

26 unlawful business practices as those terms are contemplated under California

27 Business and Professions Code § 17200, et seq.  [Comp. ¶¶ 36-43.]

28

1    Based on the foregoing, plaintiff asks for remedies as follows:  damages,

2    restitution, injunctive relief, attorney's fees and costs, and other relief the Court

3    wants to give him and a class of his "peers."  [See Complaint, Prayer, p. 15:7-16:10.]

4    **III.    LEGAL STANDARD**

5    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in

6    the complaint.  Dismissal under Rule 12(b)(6) is proper where there is either a "lack

7    of a cognizable legal theory," or "the absence of sufficient facts alleged under a

8    cognizable legal theory."  (*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699

9    (9th Cir.1988).)

10    The Court must accept all factual allegations pleaded in the complaint as true,

11    and construe them and draw all reasonable inferences from them in favor of the

12    nonmoving party.  (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

13    Cir.1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995).)

14    The Court need not, however, accept as true unreasonable inferences or

15    conclusory legal allegations cast in the form of factual allegations.  (See *Bell*

16    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ["While a complaint attacked

17    by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

18    plaintiff's obligation to provide the `grounds' of his `entitle[ment] to relief' requires

19    more than labels and conclusions, and a formulaic recitation of the elements of a

20    cause of action will not do"].)

21    Because Rule 12(b)(6) review is confined to the complaint, the Court

22    typically does not consider material outside the pleadings (e.g., facts presented in

23    briefs, affidavits, or discovery materials) when deciding such a motion.  (*In re*

24    *American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524,

25    1537 (9th Cir.1996).)  It can, however, properly consider exhibits attached to the

26    complaint and documents whose contents are alleged in the complaint but not

27    attached, if their authenticity is not questioned.  (*Lee v. City of Los Angeles*, 250

28    F.3d 668, 688 (9th Cir.2001).)

1    In addition, the Court can consider matters that are proper subjects of judicial

2    notice under Rule 201 of the Federal Rules of Evidence.  (*Id.* at 688-89; *Branch v.*

3    *Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by *Galbraith*

4    *v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Hal Roach Studios, Inc. v.*

5    *Richard Feiner and Co., Inc.*, 896 F.2d 1542.)

6    **IV.  ARGUMENT**

7         **a.  Plaintiff's First Cause of Action Under the Automatic Renewal**

8              **Law ("ARL") Should Be Dismissed**

9    Plaintiff brings his First Causes of Action under the ARL.  But that statute

10   does not create a private cause of action and does not allow direct civil claims.

11   Moreover, as explained below there a number of reasons why plaintiff could not

12   maintain an ARL cause of action against Pluralsight, even if there were such a thing.

13              *1.  The ARL Does Not Create A Private Right of Action*

14   No private right of action exists under a California statute unless the

15   California Legislature has manifested an intent to create one, as revealed through the

16   statutory language and legislative history.  (*Lu v. Hawaiian Gardens Casino, Inc.,* 50

17   Cal. 4th 592, 596 (2010) (citations omitted).)  "[T]he statutory language or

18   legislative history [must] affirmatively indicate[] such an intent" either expressly or

19   by strong implication.  (*Thurman v. Bayshore TransitMgmt., Inc.,* 203 Cal. App. 4th

20   1112, 1131-32 (2012) [citations omitted].)  Courts examine the statute's language

21   first, "as it is the best indicator of whether a private right to sue exists."  (*Lu,* 50 Cal.

22   4th at 603.)  "[C]lear, understandable, unmistakable terms" in a statute "strongly and

23   directly indicate" legislative intent to confer a private right of action.  (*Id.* at 597

24   [citations omitted].)  If the statute does not contain such express language, but

25   contains "provisions [that] create some ambiguity," then the Court may look to the

26   statute's legislative history "for greater insight."  (*Id.* at 598.)  Here, both inquiries

27   point to the same conclusion.

28

1     The language of the ARL shows no intent to create a private right of action.

2     Section 17602 is the operative provision of the statute.  It states simply that "[i]t

3     shall be unlawful for any business" to engage in certain practices related to

4     automatic renewal programs.  (Bus. & Prof. Code § 17602.)  While that section goes

5     on to describe in detail the practices that are "unlawful," nothing in its text suggests

6     that a private party has a right under the statute itself to bring a claim to recover for

7     those unlawful practices.  (*Id.*)  Instead, the Legislature confined its discussion of

8     remedies to Section 17604, which says only that "all available civil remedies that

9     apply to a violation of this article may be employed."  (*Id.* at § 17604.)  This is

10    plainly a reference to existing civil remedies, rather than a provision designed to

11    create a brand new private right of action.  It means simply that a plaintiff injured by

12    a violation of the statute may invoke an existing remedial statute, such as the UCL,

13    to enforce a violation of the ARL.  (See *Fields v. Wise Media, LLC,* No. C 12-05160

14    WHA, 2013 U.S. Dist. LEXIS 87671, at *13-15 (N.D. Cal. June 21, 2013) [Section

15    17600 claim brought pursuant to the UCL].)

16    Section 17604 apparently permits the use of *existing* civil remedies, but it

17    does not, as plaintiff suggests, create a freestanding cause of action under the ARL

18    itself.  [Complaint ¶ 30-35.]  Indeed, there is a striking contrast between the

19    language of Section 17604 and that of statutes that *do* create a private civil cause of

20    action.  For example, the Legislature unambiguously vested a right to sue in those

21    harmed by violations of the UCL: "[a]ctions for relief pursuant to this chapter shall

22    be prosecuted exclusively in a court of competent jurisdiction ... by a person who

23    has suffered injury in fact and has lost money or property as a result of the unfair

24    competition."  (Bus. & Prof. Code § 17204.)  These are the sort of "clear,

25    understandable, unmistakable terms" that indicate legislative intent to create a

26    private right of action.  (*Lu,* 50 Cal. 4th at 597 [citations omitted].)  By contrast,

27    statutory language like that of the ARL, which contains "no language suggesting a

28    private plaintiff may bring a direct action," does not manifest the requisite legislative

1   intent to allow such claims.  (*Noe v. Superior Court,* 237 Cal. App. 4th 316, 337-39

2   (2015) [no private right of action created by Labor Code section that "describes the

3   prohibited conduct" and "provides for a 'civil penalty' [but] contains no language

4   suggesting the penalty is recoverable directly by employees"].)

5       The legislative history of the ARL confirms that the Legislature did not

6   intend to create a new civil cause of action directly under the statute itself.  The

7   Senate Judiciary Committee Bill Analysis discusses the "[r]emedies available under

8   the bill," highlighting the statutory language stating that "all applicable civil

9   remedies would be available."  (Senate Judiciary Committee, Bill Analysis of Sen.

10  Bill No. 340 (2009-2010 Reg. Sess.) as amended Apr. 2, 2009, for hearing on Apr.

11  14, 2009, at 6 (attached to Request for Judicial Notice.)[1]  The committee then went

12  on to discuss the various civil remedies available:  namely, those available under the

13  UCL.  (*Id.* at p. 6-7.)  Conspicuously absent is any indication that a plaintiff could

14  proceed with a claim under the ARL by itself.  The Legislature thus understood that

15  in enacting the ARL, it was not bringing into existence a new private right of action,

16  but instead that violations of the statute could be enforced through existing laws that

17  authorized, and set the terms for, private civil remedies.

18      Plaintiff will no doubt try to get around the clear mandate of the statute and its

19  history by invoking Section 17603: "In any case in which a business sends any

20  goods, wares, merchandise, or products to a consumer, under a continuous service

21  agreement or automatic renewal of a purchase, without first obtaining the consumer's

22  affirmative consent as described in Section 17602, the goods, wares, merchandise, or

23  products shall for all purposes be deemed an unconditional gift to the consumer."

24

25

---

26  [1] The Court may properly take notice of legislative history, as it is an "[o]fficial act[]
    of the legislative ... department[] ... of a[] state of the United States."  (Evid. Code §
27  452(c); *Post v. Prati,* 90 Cal. App. 3d 626, 634 (1979).)  Plaintiff therefore
    respectfully requests that the Court take judicial notice of the contents of Exhibit C
28  to the RFJN.

1    This language does nothing to help plaintiff here for at least two reasons.

2    First, Section 17603 is not a liability provision at all, and it certainly does not give

3    consumers a right to bring civil claims against businesses.  Instead, by its terms, the

4    provision merely restricts the remedies available to a *seller* seeking payment or other

5    compensation for goods already delivered.  Section 17603, that is, bars a seller from

6    bringing a claim against a consumer to obtain payment for goods that were sent

7    under an automatic-renewal agreement that did not satisfy the statute.  The provision

8    deems such goods "an unconditional gift" and thus prevents the seller from

9    demanding their return or payment for them.  But it does not authorize affirmative

10   claims by purchasers of such goods to obtain damages or restitution from the seller.

11   In other words, Section 17603 affords consumers a shield against liability, not a

12   sword they can wield to impose it.

13   Second, Section 17603 applies only to tangible items ("goods, wares,

14   merchandise, or products") that a business physically delivers ("sends") to the

15   consumer.  That is clear from the text of the statute, which conspicuously omits any

16   language about deliveries of services, confirming that its scope is limited to

17   shipments of physical goods.  (*Compare* Bus. & Prof. Code § 17603 [referencing

18   only shipments of "goods, wares, merchandise, or products"] *with* § 17600

19   [referencing both "ongoing shipments of a product or ongoing deliveries of a

20   service"].)  Section 17603 does not extend to a case like this, which involves

21   extending a license to a consumer to view intangible intellectual property in the form

22   of online instruction courses.  Put succinctly, there is no physical product at issue

23   here.  In allowing plaintiff access to learning materials, Pluralsight did not "send[]"

24   Johnson any "goods, wares, merchandise, or products" and, thus, Section 17603 has

25   no application here.

26   In sum, because the Automatic Renewal Law does not allow plaintiff to bring

27   a claim, the first cause of action in the Complaint must be dismissed.

28

1          *2.  Pluralsight's Good-Faith Disclosures Preclude Any Liability*

2                  *Based On The Automatic Renewal Law*

3          Even if the ARL allowed for private causes of action, plaintiff's claims still

4    would fail in light of the statute's good-faith provision: "If a business complies with

5    the provisions of this article in good faith, it shall not be subject to civil remedies."

6    (Bus. & Prof. Code § 17604.)  It is clear even from the allegations in the complaint

7    that Pluralsight acted in good faith to comply with the provisions of the statute.[2]

8          As plaintiff himself admits, when Johnson signed up for Pluralsight's free 10-

9    day trial, he was informed in no uncertain terms that at the end of his 10-day trial,

10   his subscription would default to Pluralsight's "standard subscription."  Mr. Johnson

11   was also given a link where he could control, including cancelling, his account at

12   any time.  [See page 7 to the Complaint.]   Further, Johnson admits that he was given

13   a monthly reminder from Pluralsight that his subscription had renewed, which

14   contains a link where Mr. Johnson could control "the status of [his] subscription at

15   any time…"  [See page 8 and 9 to the Complaint.]  In other words, Johnson was

16   given a monthly e-mail reminder with a link wherein he could quickly cancel his

17   subscription.

18         Moreover, at the time Johnson signed up for Pluralsight's free trial, he

19   acknowledged that, should he fail to cancel his subscription, that Johnson would be

20   charged a monthly or annually fee to Mr. Johnson's express choosing.  The page on

21   which Johnson made his decision informed him: "May I cancel my trial before I'm

22   billed?  Yes, you can cancel your trial at any time during the first 10 days and we

23   will not charge your credit card.  Otherwise, after 10 days we will convert your trial

24

25

---

26   [2] Pluralsight does not concede that its actions fell short of what the statute requires.
     Pluralsight reserves all of its arguments in that regard.  For now, however, it is

27   enough to say that even accepting the allegations in the complaint, Pluralsight acted
     in good faith in disclosing and obtaining consumers' consent for its ongoing charges,

28   and that is reason alone to grant Pluralsight's motion to dismiss.

1 into a paid subscription.  Paid subscriptions are automatically renewed. As a

2 subscriber, you [may] turn off auto renew at anytime."  [See RFJN, Exhibit A.]

3     Not surprisingly, therefore, Johnson does not allege that he signed up for

4 Pluralsight without understanding that, if he did not cancel after the 10-day trial, he

5 would be charged each month for his subscription.  Nor does plaintiff allege that he

6 did not want or did not use or enjoy Pluralsight, or that he would not have

7 purchased, or that he would have cancelled his subscription, had there been some

8 more prominent notice regarding the recurring charges.  In short, there is nothing in

9 the Complaint to suggest anything other than that plaintiff knew he was signing up

10 for a service with recurring monthly payments and that he received from Pluralsight

11 exactly what he wanted and presumably proceeded to use.

12     Thus, as Section 17602(a)(3) requires, Pluralsight "provide[s] an

13 acknowledgment that includes the automatic renewal ... offer terms, cancellation

14 policy, and information regarding how to cancel in a manner that is capable of being

15 retained by the consumer."  (Bus. & Prof. Code § 17602(a)(3).)  Pluralsight provides

16 this through the webpages the consumer views upon signing up, the e-mail

17 acknowledgements and receipts sent to the consumer, and the Terms of Use which

18 are readily available at the Pluralsight website.[3]  [See RFJN, Exhibits A-B.]

19     Pluralsight's disclosures allow would-be subscribers to understand exactly

20 how and when they will be billed, and they clearly indicate Pluralsight's good faith

21 in providing such information to consumers.  Not surprisingly, therefore, plaintiff

22 nowhere alleges that he was misled in any way by Pluralsight's statements or that he

23 did not understand that he would be charged each month for his subscription.  Nor

24

25 [3] The statute says that this acknowledgement requirement *"may* be fulfilled after
completion of the initial order," Bus. & Prof. Code § 17602(d)(1) (emphasis added),
26 but this permissive language does not *require* a business to provide the
acknowledgement only after the order is completed. A business may equally comply
27 with the statute by providing the acknowledgement beforehand, or, as Pluralsight
does, through a combination of information provided both before, during and after
28 the order.

1    could plaintiff credibly allege otherwise.  Given the clear disclosures that Pluralsight

2    made and the detailed information it provided about the recurring nature of the

3    charges, it simply would not be plausible for plaintiff to claim that he was confused

4    or misled about what he was purchasing or how he would be billed for it. This is

5    precisely the scenario that the good-faith provision of the ARL was designed to

6    address.  The Legislature did not intend for businesses that make good-faith efforts

7    to disclose and obtain consent for their automatic renewal terms to be subject to civil

8    liability---particularly not from a claim brought by an individual who has not

9    asserted and could not assert that he was actually deceived or harmed.

10        In sum, even from the complaint it is obvious that Pluralsight does much

11   more than make a "clear and conspicuous" disclosure of the "amount of the

12   continuing charges."  (Bus. & Prof. Code § 17601(b).)  Before, during and after each

13   transaction the customer is informed that paid subscribers are automatically charged

14   on an ongoing basis until they turn off auto renew, making a disclosure of the length

15   of the subscription, its continuing nature, and Pluralsight's cancellation policy.  In

16   every meaningful way, Pluralsight exceeds the requirements of the statute.

17                    *3.   The Plaintiff Does Not Fit The Requirements of a*

18                         *"Consumer" Under the ARL*

19        The ARL is focused on automatic renewals to a "consumer."  (See Bus. &

20   Prof. Code § 17600, et seq.)  The term "consumer," as used in the statute contains

21   several important limitations, which are underlined here: "'Consumer' means any

22   <u>individual</u> who seeks or acquires, by purchase or lease, any <u>goods, services, money,</u>

23   <u>or credit</u> for <u>personal, family, or household purposes</u>."  (See Section 17601, sub.

24   (d).)  Of all these underlined matters, it appears that only the "individual"

25   requirement has been properly pled here.

26        On the contrary, the complaint does not set forth that "goods, services,

27   money, or credit" were exchanged here.  The terms of use set forth on the Pluralsight

28   website (see RFJN, Exhibit B) make clear that, with an individual subscription plan,

1    the subscriber gets "a non-exclusive, non-transferable license ("Individual License")

2    to use the Site in strict accordance with these Terms of Use.  The Individual License

3    allows … unlimited viewing of Pluralsight's course library…." Accordingly, the

4    complaint sets forth a subscription to a license to access and use Pluralsight's

5    intellectual property.  Simply stated, these legal rights are not tangible "goods,

6    services, money, or credit," as contemplated in Business & Professions Code,

7    section 17601, sub. (d).

8         Further, the statute is limited to "personal, family, or household purposes."

9    Other than to recite the terms of the statute, plaintiff offers no facts under which it

10   can be discerned why he subscribed to Pluralsight.  There are no facts pled that he

11   did so for "personal, family, or household purposes."  Pluralsight's courses are

12   primarily offered for intermediate to advanced vocational and business (i.e.,

13   professional) purposes, not for "personal, family, or household purposes."

14   Pluralsight's clientele generally consists of businesses, academic institutions, and

15   professional developers and/or IT administrators.  Thus, the nature of Pluralsight's

16   business takes it out of the reach of the statute's focus: "personal, family, or

17   household purposes."  Unless the plaintiff can truthfully allege facts that he

18   subscribed to Pluralsight for "personal, family, or household purposes," then the

19   Court should dismiss the cause of action under the ARL without leave.

20            **b. Plaintiff Lacks Standing to Sue Under the UCL**

21        Although the ARL does not itself create a private right of action, it appears

22   that injured parties may seek to enforce the law through the UCL.  In order to do so,

23   however, plaintiffs must satisfy the ordinary requirements for bringing UCL claims,

24   including standing.  Plaintiff here fails to do so.

25        The UCL was amended in 2004 to put an end to longstanding abuses of the

26   statute by "'prohibit[ing] private attorneys from filing lawsuits for unfair

27   competition where they have no client who has been injured in fact[.]'"

28   (*Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 228 (2006)

1  [quoting Prop. 64, § 1, subd. (e) (2004)]; *see also, e.g., Law Offices of Mathew*

2  *Higbee v. Expungement Assistance Servs.,* 214 Cal. App. 4th 544, 547 (2013) [UCL

3  has been "crafted to preclude the shakedown lawsuit."].)  To that end, a private

4  claim under the UCL may be brought only by "a person who has suffered injury in

5  fact and has lost money or property *as a result of* the unfair competition."  (Bus. &

6  Prof. Code § 17204 [emphasis added].)  This restricts UCL claims to plaintiffs who

7  can *both* satisfy the injury-in-fact requirement borrowed from Article III of the U.S.

8  Constitution *and* demonstrate that they suffered an economic injury because of the

9  defendant's allegedly wrongful conduct.  (*Kwikset Corp. v. Superior Court,* 51 Cal.

10  4th 310, 322-23 (2011).)  To make that showing, the plaintiff must allege a causal

11  connection between the loss of money or property and the defendant's alleged

12  wrongdoing.  (*Id.* at 326 [citations omitted].)  In cases like this one, alleging a form

13  of misrepresentation to, or misleading of, consumers, the UCL's causation

14  requirement can be met only by a showing of "actual reliance" by the plaintiff on the

15  defendant's alleged misrepresentation.  (*Id.* at 326-27 [citations omitted]; also see

16  *Spokeo, Inc. v. Robins*, 578 U.S. ___ [at page 7] (2016) [wherein the United States

17  Supreme Court recently confirmed that Article III of the United States Constitution

18  requires that a civil plaintiff in Federal Court have suffered an injury in fact, such

19  that that "he or she suffered an invasion of a legally protected interest that is

20  concrete and particularized and actual or imminent, not conjectural or hypothetical."

21  internal quotations and citations omitted].)

22          The complaint in this case comes nowhere near to satisfying these

23  requirements.  In fact, plaintiff does not make a single allegation that he was injured

24  in any way, let alone that any hypothetical injury could be fairly traced to any

25  allegedly unlawful conduct by Pluralsight.  Instead, the complaint alleges only that

26  plaintiff subscribed to Pluralsight and that defendant:

27          "… has failed, and continues to fail, to provide an acknowledgement
           that includes the automatic renewal or continuous service offer terms,
28          cancellation policy, and information on how to cancel in a manner that

1       is capable of being retained by Plaintiff and Class Members in
    violation of Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).
2       Moreover, Defendant failed to provide Plaintiff and Class Members
    with an acknowledgement regarding how to cancel the subscription
3       and allow Plaintiff and Class Members to cancel before payment."

4   [Complaint p. 5:11-17.]

5         These allegations are inadequate. Plaintiff does not, for example, allege (1)

6   that he was not aware at the time he subscribed that his free subscription would turn

7   into a standard subscription and renew automatically unless he cancelled it; (2) that

8   he would not have subscribed or would not have maintained his subscription had

9   Pluralsight provided more conspicuous notice; (3) that he was billed for a service he

10  did not want or did not use; or (4) that he ever attempted to cancel the subscription

11  or asked Pluralsight for a refund.  In short, Plaintiff does not allege that Pluralsight's

12  allegedly inadequate disclosure of its renewal policies caused him any harm, nor that

13  he would have done anything differently regarding his subscription had Pluralsight's

14  disclosure been different.  As such, he has not alleged any injury, let alone an

15  economic injury, and certainly not one caused by Pluralsight's alleged wrongdoing.

16  (*Kwikset,* 51 Cal. 4th at 326-27.)

17        There is also no clear allegation that plaintiff would not have chosen to

18  purchase his subscription but for Pluralsight's allegedly insufficient disclosures.

19  And such an allegation would be wholly implausible here, where Pluralsight's

20  disclosures were patently sufficient.  In sum, even if the allegations in the complaint

21  were true, they do not establish that Plaintiff suffered a loss of money or property---

22  much less that any such loss was caused by Pluralsight's allegedly inadequate

23  disclosures.  As such, plaintiff thus lacks standing to bring his UCL claim.

24        **c.  Even if Plaintiff Had Suffered an Injury, Plaintiff's Claims Under**

25              **the UCL Still Fail to State a Cause of Action**

26        Even if Plaintiff could overcome the UCL's standing requirements, his claim

27  would fail.  The UCL prohibits three types of unfair competition: "fraudulent, unfair,

28  and unlawful."  (*Pirozzi v. Apple, Inc.,* 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013)

1  [citing *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007);

2  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 185 (1999)].)

3  Remedies are confined to injunctive relief and restitution---not damages.  (*Korea*

4  *Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144 (2003).)  Here,

5  plaintiff has not adequately alleged facts to support a claim under any of the UCL's

6  three prongs, so his UCL cause of action (Count Two) should be dismissed.

7  Likewise, because plaintiff is not entitled to relief under the UCL, his prayers for

8  injunctive relief, "damages," and attorney's fees and costs under the UCL must be

9  dismissed as well.  [See Prayer, E-H.]

10           *1.  Plaintiff Cannot State A Claim Under The Fraud Prong*

11          A business practice is fraudulent under the UCL if members of the public are

12  likely to be deceived.  (*Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th

13  638, 645 (2008) [challenged conduct judged by effect on reasonable consumer].)

14  Under the UCL's heightened pleading standard for fraud-prong claims, "every

15  element [of the claim] must be specifically pleaded," including the alleged

16  misrepresentation or omission; plaintiff's actual reliance on it; damage; and

17  causation.  (*Moncada v. W. Coast Quartz Corp.,* 221 Cal. App. 4th 768, 776 (2013)

18  [citations omitted]; see also *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009);

19  *Lazar v. Superior Court,* 12 Cal. 4th 631, 645 (1996) [fraud-prong claims require

20  "facts which show how, when, where, to whom, and by what means" the

21  representations were made, citations omitted.].)

22          Plaintiff does not satisfy these requirements.  First, Plaintiff does not actually

23  identify any supposed misrepresentations or omissions by Pluralsight.  Instead, the

24  Complaint focuses on the technical requirements of the ARL.  This is unsurprising,

25  since plaintiff himself *admits that Pluralsight disclosed the nature of the automatic-*

26  *renewal feature.*  [Complaint p. 7-9.]  That alone precludes any claim under the

27  UCL's fraud prong.  (See *Castagnola v. Hewlett-Packard Co.,* No. C 11-05572-JSW,

28  2012 U.S. Dist. LEXIS 82026, at *28-29 (N.D. Cal. June 13, 2012) [dismissing UCL

1  claim where payment obligations were disclosed, with amounts in bold; plaintiffs

2  "[n]otably ... d[id] not contend that the actual language used ... was confusing or

3  misleading," instead focusing on how it was presented on webpage].)

4         Second, plaintiff has not alleged reliance on any statement or omission by

5  Pluralsight.  (See *Kwikset,* 51 Cal. 4th at 326-27.)  He has not alleged that he was

6  unaware of the automatic-renewal feature when he signed up, nor that he relied in

7  any way on Pluralsight's supposed failure to provide a more eye-catching description

8  of the feature during the sign-up process or a more detailed confirmation email.  He

9  alleges noncompliance with the ARL without alleging reliance on any specific

10  statements or omissions.  [Complaint ¶ 19.]  Even if plaintiff had alleged reliance, he

11  could not claim he did so reasonably, since Pluralsight clearly disclosed the

12  automatic-renewal feature during the sign-up process.  "The failure to read an

13  important disclosure that was 'within [Plaintiffs'] observation' is fatal to Plaintiffs'

14  claims." (*Noll v. eBay Inc.,* No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS

15  76323, at *15 (N.D. Cal. May 30, 2013) [citations omitted].)

16         Third, Plaintiff has not even hinted that consumers were likely to be deceived

17  by any omission or statement.  (See, e.g., *Bardin v. Daimlerchrysler Corp.,* 136 Cal.

18  App. 4th 1255, 1275 (2006) [rejecting unsupported "statement [that] merely

19  concludes the public would likely be deceived"].)  Nor could he. After all,

20  Pluralsight disclosed the nature of its automatic-renewal feature at the point of sale

21  and provided an easy method by which consumers could learn all of the other salient

22  details about the program.  "'A consumer cannot decline to read clear and easily

23  understandable terms that are provided on the same webpage in close proximity to

24  the location where the consumer indicates his agreement to those terms and then

25  claim that the webpage, which the consumer has failed to read, is deceptive.'"

26  (*Baxter v. Intelius, Inc.,* No. SACV 09-1031 AG (MLGx), 2010 U.S. Dist. LEXIS

27  104218, at *12 (C.D. Cal. Sept. 16, 2010) [finding webpage not deceptive as a

28  matter of law, citations omitted].)

1    In sum, Plaintiff has failed to provide the who, what, where, when, and how

2    that would support a fraud-prong claim under the UCL.  And plaintiff never will be

3    able to properly plead such allegations.

4                2.  *Plaintiff Cannot State A Claim Under The Unfair Prong*

5          Plaintiff's claim under the UCL's "unfair" prong also should be dismissed.

6    While the standard for unfair-prong claims is still in flux, see *Graham v. Bank of*

7    *Am., N.A.,* 226 Cal. App. 4th 594, 612-13 (2014), plaintiff cannot state a claim

8    regardless of the test applied.

9          Under the so-called "tethering" test, some Courts require that the alleged

10   UCL violation "be tethered to specific constitutional, statutory, or regulatory

11   provisions." (*Bardin,* 136 Cal. App. 4th at 1260-61 [citation omitted].)  The only

12   provision to which plaintiff tethers the UCL claim is the ARL.  That claim cannot

13   stand for the reasons discussed in Sections IV, a., 2-3, above, so any tethered UCL

14   claim fails.

15         Other Courts assess whether the accused practice "is immoral, unethical,

16   oppressive, unscrupulous or substantially injurious to consumers ... [weighing] the

17   utility of the defendant's conduct against the gravity of the harm to the alleged

18   victim." (*Id.* at 1260 [citations omitted].)  The paid subscription Pluralsight provides

19   to thousands of users is not immoral or substantially injurious.  Plaintiff has alleged

20   no harm from his use of the subscription (in which he received exactly what he

21   signed up for), and his allegations make clear that Pluralsight extensively disclosed

22   the recurring nature of the monthly charges for the subscription, both before and

23   after consumers signed up for subscriptions.  Thus, there can be no viable unfairness

24   claim here.  (Accord. *In re Pluralsight, Inc. Privacy Policy Litig.,* No. C-12-01382-

25   PSG, 2013 U.S. Dist. LEXIS 171124, at *47-49 (N.D. Cal. Dec. 3, 2013)

26   [dismissing unlawful- and unfair-prong claims where full disclosure was made].)

27         Under a third test, an alleged practice is "unfair" under the UCL only if (1)

28   the consumer injury is substantial; (2) the injury is not outweighed by any

1    countervailing benefits to consumers or competition; and (3) consumers themselves

2    could not reasonably have avoided the injury.  (*Camacho v. Auto. Club of S. Cal.,*

3    142 Cal. App. 4th 1394, 1403 (2006).)  Plaintiff's claim fails under this test for the

4    same reasons given above.  In offering a free subscription to technology training

5    courses and informing consumers that if they do not cancel that the subscription will

6    become a monthly paid subscription, Pluralsight provides a beneficial service to

7    thousands of IT professionals and software developers, including, presumably,

8    plaintiff here.  Plaintiff, by contrast, has alleged no injury whatsoever, let alone a

9    "substantial" one, and he could have avoided any "injury" by canceling his

10   subscription at any time.

11        Finally, some Courts have applied the actual-reliance standard for fraud-

12   prong claims to unfairness-prong claims where, as here, those claims are based on

13   the defendant's alleged misrepresentations.  (See, e.g., *Durell v. Sharp Healthcare,*

14   183 Cal. App. 4th 1350, 1355 (2010); *In re iPhone Application Litig.,* 6 F. Supp. 3d

15   1004, 1013 (N.D. Cal. 2013) [quoting *Kwikset,* 51 Cal. 4th at 326 & n.9, the "cause

16   requirement in deception cases" applies where "[t]he theory of the case is that

17   [defendant] engaged in misrepresentations and deceived consumers," citation

18   omitted].)  This further scuttles plaintiff's unfairness claim. As explained, plaintiff

19   has identified no representation or omission on which he relied, and Pluralsight's

20   disclosures of automatic renewal terms would render any reliance unreasonable.

21                    *3.  Plaintiff Cannot State A Claim Under The Unlawful Prong*

22        While a plaintiff can, presumably, bring a UCL claim premised on a violation

23   of the ARL, as is discussed in detail above there are a number of factors precluding

24   civil liability and dooming any claim based on the UCL's unlawfulness prong *vis a*

25   *vis* the ARL.  [See Sections IV, a., 2-3, above.]  To summarize those arguments:

26        •  Defendant's efforts to disclose the recurring nature of the charges at issue-

27           and plaintiff's evident understanding that he was being charged each

28           month for his subscription that he continued to apparently enjoy prevents

1    liability under the ARL's "good faith" provision.  (See Business &

2    Professions Code section 17604, sub. (b).)  [See Section IV, a., 2, above.]

3    •   The scope of the "auto-renewal" statute is limited to "individuals"

4        "purchasing or leasing" for "personal, family, or household purposes"

5        "goods, services, money, or credit."  The transaction described in the

6        complaint does not fit this description of a "consumer," as contemplated

7        in the statute.  [See Section IV, a., 3, above.]

8        **d.  Plaintiff Has Not Pled He is a California Citizen of Consumer**

9        Plaintiff claims to bring this action on behalf of "all persons in California"

10   who purchased Pluralsight subscriptions.  [Complaint ¶ 20.]  Recent Court decisions

11   have made clear that 17200, et seq., and 17600, et seq., only apply to California

12   consumers.  (See, e.g., *Warner v. Tinder, Inc.* 105 F.Supp.3d 1083, 1096-1097

13   (2015).)  The complaint is vague and ambiguous as to whether plaintiff is a

14   California Citizen and/or a California consumer.  [See Complaint ¶ 7 ["Plaintiff

15   purchased a subscription plan from Defendant in California during the Class

16   Period."].]  If the Court is not inclined to dismiss based on the above arguments, the

17   Court should require plaintiff to make a clearer allegation of standing in this regard.

18   **V.   CONCLUSION**

19       For the foregoing reasons, Pluralsight respectfully requests that the Court

20   dismiss all of plaintiff's claims with prejudice or, alternatively, under such terms as

21   the Court sees fit.

22       **RESPECTFULLY SUBMITTED.**

23

24   Dated:  June 22, 2016               HATTON, PETRIE & STACKLER

25

26                           By:  _____/S/ John A. McMahon_____
                                     Arthur R. Petrie, II
27                                   John A. McMahon
                                     Attorneys for Defendant
28                                   PLURALSIGHT, LLC